1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| BOARDS OF TRUSTEES OF THE LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS CONSTRUCTION INDUSTRY HEALTH AND SECURITY FUND et al., | CASE NO. 2:22-cv-01166-LK |
| Plaintiffs, | ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| BARRY CIVIL CONSTRUCTION, INC., | |
| Defendant. | |

18

19

20

21

22

23

24

   This matter comes before the Court on Plaintiffs' motion for summary judgment. Dkt. No. 16. Defendant Barry Civil Construction, Inc. ("Barry") does not oppose the motion. Dkt. No. 29 at 3. Because certain amounts claimed by Plaintiffs are not adequately supported, the Court grants the motion in part and denies it in part.

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 1

1

## I.    BACKGROUND

2          Plaintiffs Board of Trustees of the Locals 302 and 612 of the International Union of

3    Operating Engineers Construction Industry Health and Security Fund ("Health and Security

4    Fund"), Locals 302 and 612 of the International Union of Operating Engineers-Employers

5    Construction Industry Retirement Fund ("Pension Fund"), and Western Washington Operating

6    Engineers-Employers Training Trust Fund ("Training Fund") are multi-employer, collectively

7    bargained, employee benefit plans regulated by the Employee Retirement Income Security Act of

8    1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and the Labor Management Relations Act, 29 U.S.C.

9    § 186(c)(5) ("LMRA"), that are administered by joint labor-management Boards of Trustees. Dkt.

10   No. 17 at 2–3, 5–7. Plaintiffs are administered by Welfare and Pension Administration Services,

11   Inc. ("WPAS"), a third-party administrator. *Id.* at 2. WPAS has custody of all of Plaintiffs' trust

12   agreements and related collective bargaining agreements (including successor agreements), project

13   labor agreements, compliance agreements, employer payroll audits, and other relevant agreements.

14   *Id.*

15          Plaintiffs are primarily funded by employer contributions, including employee wage

16   withholdings. *Id.* at 3. Plaintiffs use these contributions to fund employee benefits, including health

17   and welfare benefits, pension benefits, annuity benefits, and apprenticeship benefits. *Id.* at 3–4.

18   The contributions are governed by Master Labor Agreements ("MLAs"), which determine the

19   scope of covered work for which an employer must submit contributions and how an employer

20   makes contributions to Plaintiffs. *Id.* at 3. Under each MLA, employers are obligated to submit

21   monthly "remittance reports" to WPAS. *Id.* The employer lists in each remittance report the

22   employees performing covered work, the number of hours they worked, and the contributions that

23   are due to Plaintiffs. *Id.* Each remittance report is due by the fifteenth of the month following the

24   month employees worked. *Id.* Plaintiffs rely on employers to accurately report and make

1    contributions on behalf of their employees, and use those reports to provide benefits to those

2    employees. *Id.* at 3–4.

3         Although Plaintiffs are not party to the MLAs, they audit the employers' payrolls to

4    confirm that employers are accurately reporting and making contributions. *Id.* at 3–4. Specifically,

5    an independent third-party auditor reviews both Plaintiffs' records and the employer's records to

6    confirm whether the employer has made contributions commensurate with all covered hours on

7    behalf of all employees performed covered work. *Id.* at 4. The auditor also confirms whether the

8    employer is correctly reporting the hours worked and not reporting ineligible individuals or hours

9    that should not be reported. *Id.*

10   **A.    Barry's Contributions Under the Compliance Agreement**

11        On January 12, 2010, Barry entered into an agreement with Locals 302 and 612 of the

12   International Union of Operating Engineers (the "Union") titled the "Operating Engineers

13   Compliance Agreement – Independent" (the "Compliance Agreement"). Under the Compliance

14   Agreement, Barry "adopt[ed] and agree[d] to comply with all terms and conditions" of the 2007–

15   10 MLA between the Union and the Associated General Contractors of Washington, as well as all

16   "amendments, modifications, extensions, or successors to or substitutes" of the 2007–10 MLA.

17   Dkt. No. 17 at 5; Dkt. No. 17-1 at 2.

18        Pursuant to the terms of these Agreements, Barry agreed to pay Plaintiffs monthly

19   contributions towards union dues and for various funds. Dkt. No. 17 at 5. Specifically, Barry was

20   required to contribute set amounts based on each compensable hour worked to certain "fringe

21   benefits" funds, which include Plaintiffs. Dkt. No. 17-1 at 20, 25–28 (2015–18 Local 302 MLA),

22   61–62, 67–71 (2018–21 Local 302 MLA), 107–08, 113–17 (2021–24 Local 302 MLA), 153–54,

23   159–63 (2018–21 Local 612 MLA). Barry also agreed to deduct from employee wages sums for

24   union dues (at a rate of two percent of gross wages), union programs, and voluntary political

1    programs, Dkt. No. 17-1 at 20, 28–29, 61–62, 70–71, 107–108, 116–17, 153–54, 162–63, and,

2    beginning with the 2018–21 MLAs, for the National Training Fund, *id.* at 61–62, 70–71, 107–108,

3    116–17, 153–54, 162–63. These "ancillary funds" are also collected by Plaintiffs. Dkt. No. 17 at

4    7.

5        By entering into the Compliance Agreement, Barry also agreed to accept the terms and

6    conditions of various other trust agreements, including the Locals 302 & 612 Operating Engineers

7    – Employers Retirement Trust Fund Agreement, Locals 302 & 612 International Union of

8    Operating Engineers Construction Industry Health and Security Fund Trust Agreement, Western

9    Washington Operating Engineers – Employers Training Fund Trust Agreement. Dkt. No. 17-1 at

10   2. These trust agreements provide for both liquidated damages equaling 12 percent of unpaid

11   contributions owed and interest to accumulate at a rate of 12 percent per annum on unpaid

12   contributions owed. Dkt. No. 17 at 8–10; Dkt. No. 17-1 at 256 (Revised Trust Agreement of the

13   Union's Health and Security Fund), 318 (Revised Trust Agreement of the Union's Employers

14   Construction Industry Retirement Fund), 356 (Revised Trust Agreement of the Western

15   Washington Operating Engineers – Employers Training Trust Fund).

16       Barry began submitting monthly remittance reports and payments to WPAS in March 2010.

17   Dkt. No. 17 at 5. On March 25, 2021, Local 612 terminated its bargaining agreement with Barry.

18   *Id.* at 6; *see also* Dkt. No. 17-1 at 182–83. Barry nonetheless continued submitting contributions

19   to Plaintiffs for covered hours worked in Local 612's jurisdiction. Dkt. No. 17 at 6.

20   **B.    Audit Report for January 2018 to December 2021**

21       On June 22, 2022, Plaintiffs' independent third-party auditor Anastasi Moore and Martin,

22   PLLC (the "Auditor") issued its Independent Accountants' Report on Applying Agreed-Upon

23   Procedures (the "Audit Report"). Dkt. No. 17 at 6; *see also* Dkt. No. 18 at 8–24. The Auditor

24   concluded that Barry underreported and/or underpaid $67,064.84 in fringe benefit contributions

1    between January 2018 through December 2021. Dkt. No. 17 at 6; Dkt. No. 18 at 11–12. The

2    Auditor found that "[t]he unreported hours and contributions . . . were due to the employer failing

3    to report all compensable hours for several employees, as well as contributing at incorrect rates

4    throughout the covered time frame." Dkt. No. 18 at 9. These unreported hours and contributions

5    were associated with three accounts: 8350 (Local 302 Compliance Agreement); 8353 (Local 612

6    Compliance Agreement); and 8354 (King County Georgetown Wet Weather Treatment Station

7    PLA). *Id.* at 12. The Auditor also calculated that Barry owed $8,627.39 in liquidated damages,

8    $27,398.27 in interest (through June 22, 2022), and $12,232.50 in audit fees, resulting in a total of

9    $115,323. *Id.* at 3–4, 11.

10           The Auditor also determined that Barry submitted improper overpayments to the Health &

11   Security, Pension, and Training funds totaling $20,424.85: Barry overpaid the Health & Security

12   Fund by $7,835.19, the Pension Fund by $11,953.36, and the Training Fund by $636.30. *Id.* at 22.

13   The Auditor concluded that "[t]he over reported hours and contributions . . . were due to the

14   employer reporting more hours than compensated for several employees throughout the covered

15   time frame, as well as contributing at incorrect rates in June 2019." *Id.* at 19.[1]

16           The Auditor's audit results are summarized in the table below:

17

18

19

20

21

22   [1] Plaintiffs maintain that refund or offset of overpayments to the Health & Security Fund and the Pension Fund are
     not available to Barry because those funds "[we]re used to provide eligibility for health and welfare benefits to
     [Barry]'s employees" and refunds to Pension funds needed to be approved by the Union's Board of Trustees and are
23   subject to "an employee-by-employee analysis because an offset/refund is not available if the participant has already
     retired or withdrawn benefits." Dkt. No. 16 at 9–10; *see also* Dkt. No. 17 at 7–8. Therefore, Plaintiffs only agree to
24   offset the $636.30 that Barry overpaid to the "Training" fund. Dkt. No. 16 at 10; *see also* Dkt. No. 17 at 8.


ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 5

| Account | Underreported Hours | Underpaid Contributions | Overreported Hours | Overpaid Contributions |
|---|---|---|---|---|
| 8350 – Local 302 Compliance Agreement (Unreported Hours) | 3,326.25 | $66,097.58 | 453.5 | $10,317.23 |
| 8350 – Local 302 Compliance Agreement (Incorrectly Paid Rates on Reported Hours) | 888 | $672.66 | | |
| 8353 – Local 612 Compliance Agreement | 5 | $99.60 | 455.5 | $10,099.82 |
| 8354 – King County Georgetown Wet Weather Treatment Station PLA | 260 | $195 | 260 | $7.80 |
| Liquidated Damages | | $8,627.39 | | |
| Interest (through June 22, 2022) | | $27,398.27 | | |
| Audit Fees | | $12,232.50 | | |

*Id.* at 12, 18. The Audit Report did not consider the wage deductions required by the MLAs for any of the ancillary funds (i.e., working dues check-off, union programs, voluntary political programs, or national training). *See generally id.* at 8–24; *see also* Dkt. No. 17 at 7.

**C.    January 2022 to July 2023 Delinquency Period**

Barry also submitted remittance reports for the January 2022 to July 2023 time period. Dkt. No. 17-1 at 205–226. According to Plaintiffs, Barry only "partially complied" with its contribution obligations when it submitted these remittance reports and "either did not pay its contributions or paid its contributions late." Dkt. No. 16 at 9; Dkt. No. 17 at 8. Based on Plaintiffs' calculations, Barry owes $43,260.62 for this time period, including $30,646.52 in contributions, $9,809.88 in liquidated damages, and $2,804.22 in prejudgment interest (calculated through September 26, 2023). Dkt. No. 16 at 9; Dkt. No. 17 at 10; *see also* Dkt. No. 17-1 at 380–83 (Plaintiffs' calculations of Barry's owed amount).

**D.    Procedural History**

On August 22, 2022, Plaintiffs filed a complaint in this matter, alleging that Barry had breached the Compliance Agreement by failing to submit timely contributions for all covered hours worked by employees during the January 2018 through December 2021 audit period ("Audit Period"). Dkt. No. 1 at 2–3. In their complaint, Plaintiffs sought money judgment in the amount of $119,299.23 to cover the Audit Period, including $71,041.07 in unpaid contributions, $8,627.39 in liquidated damages, $27,398.27 in interest, and $12,232.50 in audit fees. *Id.* at 4. Plaintiffs also sought money judgment "for all outstanding contributions, liquidated damages, and interest due to [Plaintiffs] for the months of January 2022 through current," as well as "reasonable attorneys' fees and costs and expenses of suit." *Id.*

On September 29, 2023, Plaintiffs filed a motion for summary judgment, seeking judgment on their ERISA claims for contributions totaling $71,117.18 (including $67,064.84 in delinquent contributions to the Health & Safety, Pension, and Training Funds, and $4,052.34 in ancillary funds), "minus $636.30 identified as an overpayment to Training"; $8,627.39 in liquidated damages; $27,398.27 in interest (calculated through June 22, 2022); $10,059.77 in additional interest (calculated through September 28, 2023); and $12,232.50 in audit accounting fees for the Audit Period. Dkt. No. 16 at 2, 8, 20. Plaintiffs also seek judgment for $43,260.62 for the period of January 2022 to July 2023, including $30,646.52 in delinquent contributions, $9,809.88 in liquidated damages, and $2,804.22 in prejudgment interest (calculated through September 26, 2023). Dkt. No. 16 at 2, 9; Dkt. No. 17 at 10; Dkt. No. 17-1 at 380–83.

On October 23, 2023, instead of filing a proper response by the due date, and despite conceding that "it was too late, in accordance with court rules, for defense counsel to withdraw from the case," Barry filed a brief stating that its counsel was "not in the position to file a substantive response" to Plaintiffs' motion because Barry "can no longer afford to pay for the

1   services of its current legal counsel." Dkt. No. 21 at 3. In that response brief, Barry also requested

2   an extension of time so it could replace its counsel and file a proper opposition to Plaintiffs'

3   motion. *Id.* at 3–4.

4         On February 15, 2024, the Court ordered Barry's counsel to show cause why he should not

5   be individually sanctioned for violating the Local Civil Rules. Dkt. No. 25 at 1, 4. The Court

6   observed that Barry's counsel had neither withdrawn nor filed a proper motion to withdraw by the

7   time Barry's response was due, and therefore he was obligated to continue representing Barry in

8   accordance with applicable rules. *Id.* at 2–4. It further observed that Barry's request for affirmative

9   relief in its response brief was improper. *Id.* at 3.

10        After receiving a timely response to the show cause order from Barry's counsel, Dkt. No.

11  26, the Court ordered him to file a response to Plaintiffs' motion for summary judgment, Dkt. No.

12  28 at 5. Barry's counsel filed a timely response to Plaintiffs' motion on May 2, 2024, but stated

13  that Barry "has engaged Bankruptcy Counsel" and consequently he could not "present facts to

14  sufficiently oppose [Plaintiffs'] motion and therefore does not oppose." Dkt. No. 29 at 3; *see also*

15  Dkt. No. 30 at 3–4. To date, Barry has not yet filed a petition for bankruptcy. Plaintiffs filed a brief

16  reply on May 7, 2024, reiterating that summary judgment be granted in its favor and that "[i]nterest

17  on the outstanding contributions continues to accrue." Dkt. No. 32 at 1–2.

## II.   DISCUSSION

### A.   Jurisdiction

20        The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Sections 502

21  and 515 of ERISA. 29 U.S.C. § 1132(e)(1) ("Except for actions under subsection (a)(1)(B) of this

22  section, the district courts of the United States shall have exclusive jurisdiction of civil actions

23  under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any

24  person referred to in section 1021(f)(1) of this title."); *Id.* § 1145 ("Every employer who is

1  obligated to make contributions to a multiemployer plan under the terms of the plan or under the

2  terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make

3  such contributions in accordance with the terms and conditions of such plan or such agreement.");

4  *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771,

5  776 (9th Cir. 2009) (explaining that Section 1145 provides a federal cause of action to enforce

6  preexisting obligations created by collective bargaining agreements). Trust funds, including the

7  Plaintiffs in this case, can bring claims as fiduciaries under sections 1132 and 1145. *See, e.g.*,

8  *Locals 302 & 612 of the Int'l Union of Operating Eng'rs Constr. Indus. Health & Sec. Fund v.*

9  *Barry Civil Constr., Inc.*, No. C16-0404-JPD, 2016 WL 4528462, at *3 (W.D. Wash. Aug. 29,

10  2016).

11  **B.    Legal Standards**

12       1.  Summary Judgment

13       Summary judgment is appropriate only when "the movant shows that there is no genuine

14  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

15  Civ. P. 56(a). The Court does not make credibility determinations or weigh the evidence at this

16  stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The sole inquiry is "whether the

17  evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

18  sided that one party must prevail as a matter of law." *Id.* at 251–52. And to the extent that the Court

19  resolves factual issues in favor of the nonmoving party, this is true "only in the sense that, where

20  the facts specifically averred by that party contradict facts specifically averred by the movant, the

21  motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

22       The Court will, however, enter summary judgment "against a party who fails to make a

23  showing sufficient to establish the existence of an element essential to that party's case, and on

24  which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

1   (1986). The moving party must meet this burden even if the motion for summary judgment is

2   unopposed. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970) ("Where the evidentiary

3   matter in support of the motion does not establish the absence of a genuine issue, summary

4   judgment must be denied even if no opposing evidentiary matter is presented." (cleaned up)).

5       2.   Unpaid Contributions Under ERISA

6       Section 515 of ERISA provides that employers must pay contributions required "under the

7   terms of the plan or under the terms of a collectively bargained agreement," 29 U.S.C. § 1145, and

8   Section 502 provides for a civil action and remedies, including liquidated damages, interest,

9   attorney's fees, and costs, *id.* § 1132(a), (g). To be entitled to a mandatory award of liquidated

10  damages, interest, attorney's fees, and costs under 29 U.S.C. § 1132(g)(2), (1) the employer must

11  be delinquent at the time the action is filed; (2) the district court must enter a judgment against the

12  employer; and (3) the plan must provide for such an award. *Nw. Adm'rs, Inc. v. Albertson's, Inc.*,

13  104 F.3d 253, 257 (9th Cir. 1996).

14      Plaintiffs are third-party beneficiaries to the MLAs, and "have a statutory and fiduciary

15  duty to collect contributions that are owed." *Bd. of Trs. of Locals 302 and 612 of the Int'l Union*

16  *of Op. Eng'rs Constr. Indus. Health and Sec. Fund v. Fenix Earthworks LLC*, No. C22-0799-JLR,

17  2024 WL 1344845, at *3 (W.D. Wash. Mar. 29, 2024) (quoting *Operating Eng'rs Pension Tr.*,

18  859 F.2d at 1343–44); *see also C. States, Se. and Sw. Areas Pension Fund v. C. Transp., Inc.*, 472

19  U.S. 559, 572–73 (1985). "Where an employer overpays contributions, ERISA provides for the

20  return of those contributions only if the employer shows that they resulted from a mistake of fact

21  [or law] and that the equities favor restitution." *Fenix Earthworks LLC*, 2024 WL 1344845, at *3

22  (citing *British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 882 F.2d 371, 374 (9th

23  Cir. 1989)); *see also* 29 U.S.C. § 1103(c)(2).

24

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 10

1    **C.    Plaintiffs Only Partially Support Their Motion with Adequate Documentation**

2          Even though Barry does not oppose Plaintiffs' motion for summary judgment, the Court

3    still reviews Plaintiffs' motion and supporting documents to determine whether they "are

4    themselves insufficient to support a motion for summary judgment or on their face reveal a genuine

5    issue of material fact." *Henry*, 983 F.2d at 949 (quoting *Hamilton v. Keystone Tankship Corp.*, 539

6    F.2d 684, 686 n.1 (9th Cir. 1976)); *see also Serv. Emps. Int'l Union Nat'l Indus. Pens. Fund v.*

7    *Hamilton Park Health Care Ctr., Ltd.*, No. 14-84 (JDB), 2016 WL 183505, at *2 (D.D.C. Jan. 14,

8    2016) (noting that "[t]he Court cannot blindly accept [plaintiff] Fund's figures" and denying

9    summary judgment due to inadequate documentation despite lack of serious opposition by

10   defendant); *Trs. of the Local 7 Tile Indus. Welfare Fund v. Alp Stone, Inc.*, No. 12-CV-5974 (NGG)

11   (RER), 2015 WL 4094615, at *3 (E.D.N.Y. June 17, 2015) (awarding summary judgment only

12   after "recalculat[ing] the required contributions to the [plaintiff funds] in accordance with the rates

13   provided in the [collective bargaining agreement] based on the hours presented in the audit report),

14   *report and recommendation adopted*, 2015 WL 4112449 (E.D.N.Y. July 7, 2015).

15         After reviewing Plaintiffs' submissions, the Court has identified several inconsistencies

16   and errors that reflect potential disputes of material fact that, despite Barry's lack of opposition,

17   preclude a wholesale grant of summary judgment to Plaintiffs. *See* Fed. R. Civ. P. 56(a); *Hamilton*

18   *Park*, 2016 WL 183505, at *2–4; *cf. Bds. of Trs. of Locs. 302 & 612 of Int'l Union of Engs. Constr.*

19   *Indus. Health & Sec. Fund v. Donkey Hoof LLC*, No. 2:22-cv-00731-JHC, 2022 WL 17716443, at

20   *2 (W.D. Wash. Dec. 15, 2022) ("These inconsistencies also cast doubt over the merits and

21   sufficiency of the complaint [and] the sum of money at stake[.]"). Plaintiffs' errors shift the burden

22   of performing accurate calculations onto the Court, causing delay and inefficiency; in the future,

23   the Court may summarily deny such a deficient motion. The Court first addresses the amounts

24

claimed for the January 2018 to December 2021 Audit Period before turning to the amounts for

the January 2022 to July 2023 period.

1. Inconsistencies in Supporting Documentation for January 2018 Through December 2021 Audit Period Preclude Award in the Amount Requested

Plaintiffs seek an award on their ERISA claims for contributions totaling $71,117.18,

including $67,064.84 in delinquent contributions to the Health & Safety, Pension, and Training

Funds and $4,052.34 to the ancillary funds, as well as $8,627.39 in liquidated damages, $27,398.27

in interest (calculated through June 22, 2022), $10,059.77 in additional interest (calculated through

September 28, 2023), and $12,232.50 in audit accounting fees for the Audit Period. Dkt. No. 16 at

2; Dkt. No. 18 at 12. The Court declines to award Plaintiffs all of these requested amounts,

however, because their supporting documentation suffers from a number of errors and

inconsistencies.

First, the amounts determined by the Auditor and relied upon in Plaintiffs' motion include

allegedly delinquent contributions to WPAS account no. 8354, which is associated with a certain

King County Georgetown Wet Weather Treatment Station PLA. Dkt. No. 18 at 12; *see also* Dkt.

No. 16 at 2, 8, 20. Plaintiffs have not established that this account no. 8354 is an account that Barry

agreed to fund under its compliance agreement with the Local 302 and 612 of the International

Union of Operating Engineers,[2] and consequently have not established that the contributions

associated with these accounts are appropriately included in the total amount of underpaid

contributions claimed by Plaintiffs.

---

[2] Under the compliance agreement, Barry "adopt[ed] and agree[d] to comply with all terms and conditions" of the 2007–2010 labor agreement between the Union and the Associated General Contractors of Washington, as well as all "amendments, modifications, extensions, or successors to or substitutes" of that labor agreement. Dkt. No. 17 at 5; Dkt. No. 17-1 at 2. While the Local 302 Compliance Agreement and Local 612 Compliance Agreement ostensibly fall within the purview of the CBA, *see* Dkt. No. 18 at 12, it is not clear from the record whether the King County Georgetown Wet Weather Treatment Station PLA does as well.

Second, Plaintiffs make little effort to explain their calculations of liquidated damages and interest that they claim should be assessed on delinquent contributions during the Audit Period. Their motion relies upon the Audit Report and declarations which cite the liquidated damages and interest rates that are to be applied pursuant to the trust agreements, *see* Dkt. No. 17 at 8–10; Dkt. No. 18 at 4–5; however, Plaintiffs' calculations and the Auditor's report do not show how the claimed damages and interest amounts were calculated, *see e.g.*, Dkt. No. 17-1 at 203, 380–83; Dkt. No. 18 at 12. The apparent errors in the Audit Report, however, are particularly puzzling and concerning. For example, the Audit Report's determinations of liquidated damages owed to each Plaintiff during the Audit Period do not align with what one would expect when applying the 12 percent rate to the alleged contributions owed, as specified in the Trust Agreements:

| Fund | Audit Report Unpaid Contributions | Expected Liquidated Damages (Unpaid Contributions x 0.12) | Audit Report Liquidated Damages |
|---|---|---|---|
| Health & Safety Fund | $26,190.57 | $3,142.87 | $3,273.86 |
| Pension Fund | $38,542.39 | $4,625.09 | $4,727.28 |
| Training Fund | $2,331.88 | $279.83 | $626.25 |
| **Total** | $67,064.84 | $8,047.79 | $8,627.39 |

Dkt. No. 18 at 12; *see also id.* at 5 (declaration of Auditor stating that she "calculated liquidated damages due on the unpaid contributions owed by [Barry]" and that "[l]iquidated damages are calculated at twelve percent (12%) in accordance with the relevant Trust Agreements"); Dkt. No. 17 at 8–10; Dkt. No. 17-1 at 256, 318, 356. Plaintiffs must show their work; the Court will not carry their burden for them. *See, e.g.*, *Hamilton Park*, 2016 WL 183505, at *2; *Alp Stone*, 2015 WL 4094615, at *6 ("It is not the Court's job nor duty to perform such calculations in the first instance, rather the Court is to insure that such calculations presented are arithmetically sound and supported, both factually and legally."); *see also Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants."); *Young v. Sundown*

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 13

*Elec. Co.*, No. 3:14-CV-00729-HZ, 2014 WL 4639881, at \*2 (D. Or. Sept. 16, 2014) (declining to award plaintiffs liquidated damages and interest where "[p]laintiffs attach[ed] a spreadsheet, but provide[d] no explanation of how any of the requested sums were calculated"); *Dynascan Tech., Inc. v. Plasmedia Prods., Inc.*, No. SACV09-00587-CJC(MLGx), 2010 WL 11523712, at \*3 (C.D. Cal. Sept. 23, 2010) (declining to award contract damages or prejudgment interest where plaintiff "failed to adequately tabulate these amounts or 'show their work' as to how final damages should be calculated").

Finally, Plaintiffs similarly do not adequately explain their calculation of additional contributions owed for the ancillary funds during the Audit Period. They instead simply contend that the additional $4,052.34 owed was calculated by using the independent audit report's unreported hours "multiplied by the rates of the ancillary funds[.]" Dkt. No. 17 at 7. The documentation that Plaintiffs offer in support of this attestation falls short of what is needed to carry their burden on summary judgment. For instance, while Exhibit F of an accompanying declaration to Plaintiffs' motion shows the additional amount of "Working Dues Check-Off" owed per employee, neither this spreadsheet nor the Audit Report upon which the spreadsheet relies provide the amount of gross wages each employee earned. *See* Dkt. No. 17-1 at 203; Dkt. No. 18 at 13–17. The Court therefore is unable to confirm that the dues listed are equal to two percent of gross wages, as required by the relevant labor agreements. *See* Dkt. No. 17-1 at 20, 61–62, 107–108, 153–54. Plaintiffs also do not explain why they are necessarily entitled to per-hour contributions for political programs, which the MLAs indicate are "voluntary." *See* Dkt. No. 17-1 at 20, 61–62, 107–108, 153–54. Specifically, the MLAs provide that "the employer will deduct five cents ($0.05) for each hour that the employee receives wages," but only "on the basis of individually signed, voluntary authorized deduction forms." *Id.* at 28–29, 71, 117, 163. Neither Plaintiffs' briefing nor the record addresses whether this requirement was met during the Audit

1    Period. Again, the Court will not do Plaintiffs' work for them. *Young*, 2014 WL 4639881, at *2;

2    *Dynascan Tech., Inc.*, 2010 WL 11523712, at *3.

3            Therefore, for the claimed amounts during the Audit Period, Plaintiffs have only

4    demonstrated that they are entitled to summary judgment on (1) delinquent contributions during

5    the Audit Period that are adequately supported by the record and Plaintiffs' supporting

6    documentation; (2) liquidated damages on that undisputed amount; and (3) audit fees, which are

7    undisputed and supported by adequate documentation. This includes the underpayments identified

8    by the Audit Report to account numbers 8350 and 8353 that were owed by Barry pursuant to its

9    compliance agreements with Locals 302 and 612.

10           The Audit Report also concluded that Barry overreported hours and overpaid contributions

11   during the Audit Period. Dkt. No. 18 at 21. These overpaid contributions included $7,835.19 to

12   the Health Fund, $11,953.36 to the Pension Fund, and $636.30 to the Training Fund. *Id.* An

13   employer can reclaim any overpaid contributions if the employer can show that the overpayments

14   were due to mistake of fact or law and that equities favor restitution. *British Motor Car Distribs.*,

15   882 F.2d at 374–75; *Fenix Earthworks LLC*, 2024 WL 1344845, at *3; 29 U.S.C. § 1103(c)(2).

16   Plaintiffs contend that the Health Fund contributions are not eligible for refund because they "were

17   used by the Health Trust to provide health and welfare eligibility to [Barry's] employees[,]";

18   however, Plaintiffs concede that offset of Barry's Training Fund overpayment against its underpaid

19   amounts to that Fund is appropriate because "benefits have not been provided to [Barry's]

20   employees as the result of these errors[.]" Dkt. No. 16 at 16–17. Because Barry does not oppose

21   Plaintiffs' motion, it is not entitled to any offsets from overpaid contributions other than those to

22   the Training Fund.

23

24

As shown in the table below, for the January 2018 to December 2021 period, the Court awards Plaintiffs $66,233.54 in delinquent contributions, $7,748.02 in liquidated damages, and $12,232.50 in audit fees, for a total of $86,414.06.

| Underpaid Account | Underpaid Amount |
|---|---|
| 8350 – Local 302 Compliance Agreement (Unreported Hours) | $66,097.58 |
| 8350 – Local 302 Compliance Agreement (Incorrectly Paid Rates on Reported Hours) | $672.66 |
| 8353 – Local 612 Compliance Agreement | $99.60 |
| Training Fund Overpayment | (636.30) |
| **Undisputed Owed Contribution Total** | **$66,233.54** |
| **Liquidated Damages** | **$7,748.02** |
| **Audit Fees** | **$12,232.50** |
| **Total** | **$86,414.06** |

Dkt. No. 18 at 12.

    2.   Amount Requested for January 2022 to July 2023 Period

Plaintiffs also allege that Barry owes them $30,646.52 in delinquent contributions from January 2022 to July 2023, as well as $9,809.88 in liquidated damages and $2,804.22 in interest, for a total of $43,260.62. Dkt. No. 16 at 17, 20.[3] Unlike with the Audit Period, Plaintiffs support their claimed amounts here with more comprehensive documentation: remittance reports from January 2022 to August 2023 that were submitted by Barry to WPAS, Dkt. No. 17-1 at 205–26, and a spreadsheet summarizing those reports, amounts paid by Barry towards its delinquent contributions, and associated liquidated damages and interest, *id.* at 380–83.

However, this documentation still suffers from two problems. First, although the liquidated damages calculations are easy for the Court to review and appear to be correct, Plaintiffs again

---

[3] Plaintiffs claim a different amount in liquidated damages for this period (i.e., $9,984.26) elsewhere in their summary judgment motion, *id.* at 2; however, the Court assumes this was an error as the $9,809.88 amount is affirmed in the affidavit that Plaintiffs cite as support, *see* Dkt. No. 17 at 10.

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 16

make little effort to explain their calculations of accrued interest. *Id.* at 380–83. Therefore, these alleged amounts are not adequately supported and summary judgment is not warranted. *Young*, 2014 WL 4639881, at *2; *Dynascan Tech., Inc.*, 2010 WL 11523712, at *3.

It also appears that Plaintiffs erroneously included hours worked in Local 612's jurisdiction in the total amount of underpaid contributions claimed during the January 2022 to July 2023 delinquency period. *Compare, e.g.*, Dkt. No. 17-1 at 205 (showing 25 compensable hours worked in Local 612's jurisdiction by Anderson G. and Zylstra K. in January 2022), *with id.* at 380 (basing contributions owed to account 8350, as well as associated liquidated damages and interest, on 235 compensable hours worked between Locals 302 and 612's jurisdictions, as opposed to 210 compensable hours worked in Local 302's jurisdiction). As of March 25, 2021, Barry no longer had a valid bargaining agreement with Local 612, and WPAS's account no. 8353 accordingly no longer accepted contributions upon termination of that bargaining agreement. Dkt. No. 17 at 6. Plaintiffs have not established a basis upon which to award damages or other recovery following termination of this agreement. These hours therefore appear to be overreported, and the associated contributions to Plaintiffs based on these hours should be reduced from the total amount of delinquent contributions. Based on the applicable rates for each fund in January 2022, this reduction amounts to $533.00:

| Fund | Hours | Rate | Total |
|---|---|---|---|
| Health & Safety Fund | 25 | $6.97 | $174.25 |
| Pension Fund | 25 | $13.65 | $341.25 |
| Training Fund | 25 | $0.70 | $17.50 |
| Total | | | $533.00 |

Dkt. No. 17-1 at 107–08; 205. The $30,646.62 that Plaintiffs claim for this period is therefore reduced to $30,113.62.[4]

---

[4] Unlike the overpayments during the audit period, *see supra* Section II.C.2, Barry's overpayments for hours worked

In summary, for the January 2022 to July 2023 period, the Court awards Plaintiffs $30,113.62 in delinquent contributions and $9,809.88 in liquidated damages.

### III.  CONCLUSION

For the foregoing reasons, the Court ORDERS that Plaintiffs' motion for summary judgment, Dkt. No. 16, is GRANTED IN PART and DENIED IN PART. Specifically,

- for the January 2018 to December 2021 period, the Court awards Plaintiffs $66,233.54 in delinquent contributions, $7,748.02 in liquidated damages, and $12,232.50 in audit fees, for a total of $86,414.06 for this period; and

- for the January 2022 to July 2023 period, the Court awards Plaintiffs $30,113.62 in delinquent contributions and $9,809.88 in liquidated damages, for a total of $39,923.50 for this period.

The parties are ORDERED to meet and confer and submit a joint status report proposing a bench trial date and pretrial deadlines in accordance with the Court's case scheduling template no later than February 18, 2025. Dkt. No. 33-1 at 2.

Dated this 3rd day of February, 2025.

Lauren King
United States District Judge

---

in Local 612's jurisdiction can be reduced from the total amount of its delinquent contributions because Barry did not have a valid agreement with Local 612 at the time. In other words, Barry's payments to Plaintiffs for the Local 612 hours were not payments made pursuant to ERISA; therefore, they are not subject to the same limitations on restitution as the audit period overpayments.

ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 18